# Mobile & Montgomery Railway Co. *et al. v.* Alabama Midland Railway Co.

*Bill in Equity to enjoin Railroad Company from Constructing its Railroad on the Lands of another Railroad Company.*

1. *Corporation invested with right of eminent domain; can be restrained by court of equity from appropriating land without making compensation.*—A court of equity will restrain a corporation empowered to exercise the right of eminent domain, when it is proceeding to take or injure land for its own uses, without the consent of the owner and without legal proceedings to subject it to such use; and it will exercise this juris-

10

[Mobile & Montgomery Ry. Co. *et. al.* v. Ala. Midland Ry. Co.]

diction in this respect, without regard as to whether or not there was irreparable injury or there was an adequate remedy at law. The grounds of this equitable jurisdiction is the enforcement of the constitutional prohibition against such taking or injury to the lands of another, and this constitutional provision is applicable alone where the right of eminent domain might be exercised.

2.   *Same; same;when bill contains equity.*—Where a bill, filed by one railroad company against another to enjoin the defendant from constructing its road and making excavations on the complainant's lands, avers that the defendant has wrongfully taken possession of the lands of which the complainant was the owner and has appropriated the same to its own uses, that it had not proceeded to the condemnation of the lands in the mode prescribed by law, and did not, in obedience to the constitution, make just compensation therefor, such bill contains equity, and confers upon the court jurisdiction to prevent the further invasion of the complainant's property by the defendant, without regard to any question of irreparable injury.

3.   *Injunction; what necessary for dissolution of injunction upon denials of the answer.*—Where, on a bill filed therefor, a temporary injunction is issued, such injunction will not be dissolved on the denials of the answer, when the denials are stated merely as conclusions or as inferences to be drawn from facts alleged in the bill; but to overcome the allegations of fact in the bill authorizing the dissolution of the injunction, the answer must deny the existence of such facts specifically and without equivocation or evasion.

4.   *Same; same.*—Where a bill is filed to enjoin a defendant from wrongfully taking the land of which the complainant was the owner, and there are averred facts constituting the title in the complainant, if the answer depends upon a want of such title in the complainant, as a ground for dissolving the injunction, a mere denial of such ownership as a conclusion is insufficient; and upon the same principle, if the denial of the complainant's ownership is based upon a counter claim or title by the defendant, the mere assertion in the answer of title as a conclusion, is insufficient; but the facts upon which the title arises should be set forth, in order that the court may see that the claim of title is well founded.

5.   *Same;same.*—Where a bill praying an injunction alleges facts constituting title in the complainant, and the answer merely denies the complainant's title, the allegations of the bill will

on the motion to dissolve the injunction upon the denials of the answer, be taken as true.

6. *Same; same; how answer considered on motion to dissolve.*— On motion to dissolve an injunction upon the denials of the answer, only so much of the answer as is responsive to the bill will be considered.

7. *Same; dissolution on the denials of the answer; improper unless answer is sworn to.*—Under the rule of chancery practice (Rule 32, Code, p. 1209), it is improper to dissolve an injunction on the denials of an answer which is not sworn to, whether the oath is waived by the bill or not; and the answer of a defendant corporation is not an exception to this rule.

8. *Same; same; insufficiency of affidavit.*—When in an answer by a defendant corporation, upon the denials of which a motion is made to dissolve the injunction against it, there is no statement purporting to have been made as of the knowledge or upon the information of an officer of the defendant company, the verification of such answer by the affidavit of one of the officers of the company which recites that the affiant "is acquainted with the premises in controversy, and that the facts as set forth in the several paragraphs of the foregoing answer, when made of his own knowledge are true, and when stated on information and belief he verily believes the same to be true," is insufficient, and is not a compliance with the rule of chancery practice requiring that the answer be sworn to before an injunction will be dissolved upon its denials, (Rule of Chancery Practice 32; Code, p. 1209).

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. A. D. SAYRE.

The bill in this case was filed by the Mobile & Montgomery Railway Company and the Louisville & Nashville Railroad Company, against the Alabama Midland Railway Company. The bill contained eight paragraphs. In the first and second paragraphs, the complainants averred their organization and incorporation as railroad companies, and that they were operating railroads in and about the city of Montgomery; that the Mobile & Montgomery Railway Company was formed under the general laws of the State of Alabama by a purchase at a judicial sale in the year 1874, of the property of what was then known as the Mobile & Montgomery Railroad Company, which sale was made under and by virtue of a decree of the chancery court of Montgomery county; that the

Mobile and Montgomery Railroad Company was organized under the general act of the General Assembly of Alabama consolidating the Alabama & Florida Railroad Company of Alabama and the Mobile & Great Northern Railroad Company.

In the third paragraph of the bill it was averred that among other property in the city of Montgomery the Mobile & Montgomery Railroad Company acquired certain specifically described lots from the Alabama & Florida Railroad Company, which said lots constitute a portion of the property involved in this controversy, and that said property became the property of the Mobile & Montgomery Railway Company.

In the fourth paragraph of the bill it was averred that the Mobile & Montgomery Railway Company, on January 9, 1871, purchased a right of way for the railroad through certain specifically described property, which constitutes the other portion of the property involved in said controversy; and said railroad company entered into possession of the right of way over said property so purchased, and the Mobile & Montgomery Railway Company owned and used said right of way at the time of filing the bill in this suit.

In the fifth paragraph of the bill there was a definite and specific description and location of the property described in the third and fourth paragraphs, and there is reference made to a map attached to the bill as an exhibit, in order to show with greater certainty the location of said property and its boundaries.

In the sixth paragraph of the bill it is averred that on January 12, 1881, the Louisville & Nashville Railroad Company leased by formal contract, in writing, duly executed, for a term of twenty years from its date, all the lines of railway belonging to the Mobile & Montgomery Railway Company, extending from the city of Montgomery to the city of Mobile, and also all of its depots, warehouses, rights of way, and all its other property in the city of Montgomery; and that at the time of the filing of the present bill, the Louisville & Nashville Railroad Company was in possession of all of said property, of the Mobile & Montgomery Railway Company, using the same under the authority of said lease.

In the seventh paragraph of the bill it was averred that the defendant, the Alabama Midland Railway Company was a corporation organized under the general laws of the State of Alabama, operating a railroad from Montgomery, Alabama, to Bainbridge, Georgia; that its freight depot fronted on North Court Street in the city of Montgomery about a half mile distant from the property involved in this suit; that in order to reach said depot it was not necessary for the Alabama Midland Railway Company to use or come upon the property mentioned in paragraphs three, four and five; that the cars of the Alabama Midland Railway Company were carried from its freight depot over a railroad track on Tallapoosa Street in the city of Montgomery, and thence over what is known as River Street to the western limits of the city, where were the yards of the Alabama Midland Railway Company; that said Alabama Midland Railway Company had been making vast changes in the grade of its property along said several streets and between them and the western limits of the city of Montgomery, and that a part of the track above described was located on property not belonging to the complainants, but joins the property of complainants on the south.

In the eighth paragraph of the bill it was averred that the Alabama Midland Railway Company had laid along the complainants' property particularly described in the preceding paragraphs of the bill, a track which is a spur track and forms no part of the defendant's line, nor its approach to said depot or the passenger station in the city of Montgomery, and it is using said track to transport cars thereon, loaded with dirt taken from the complainant's land by means of a steam shovel as hereinafter shown. Complainants further state that said track has been built on their property within the last sixty days, and that a steam shovel has been located on said property and engaged in excavating thereon at different times within said sixty days, and is steadily engaged in lowering the grade of said property, and in carrying away the dirt taken therefrom and converting it to the said Alabama Midland Railway Company; and that it has moved said dirt by means of cars operated on the track on complainants' land hereinbefore referred to; that said steam

shovel is being worked in an easterly direction, and complainants are informed and believes, and upon such information and belief, state that it is the purpose of the Alabama Midland Railway Company to lower the grade on complainants' property from ten to twenty-five feet as hereinabove set forth, and to carry off and convert the dirt taken therefrom to the use of said Alabama Midland Railway Company.

Complainants further charge that said track hereinabove described was and is laid upon the property of the Mobile & Montgomery Railway Co.; without permission or consent of complainants, or either of them; and that said Alabama Midland Railway Company never obtained the consent of the Louisville & Nashville Railroad Company to operate said track, or remove the dirt from said property, and that said acts are an injury to complainants and a flagrant violation of their rights, and of Art. XIV, § 7 of the Constitution. Complainants further charge that said Alabama Midland Railway Company has never instituted any *ad quod damnum* proceedings, or taken any legal steps to condemn said property, or to ascertain the damages, or otherwise obtain permission to change the grade thereof or to operate railway tracks thereon. That the property on which said track is laid and steam shovel is used, is a portion of complainants' right of way and is near to the approach to their freight and passenger station in the city of Montgomery. That the Mobile & Montgomery Railway forms a part of a railroad system extending from Louisville, Kentucky, to New Orleans, Mobile and Pensacola, which is largely engaged in interstate commerce between said points, transporting large quantities of coal and other products to the Gulf, as well as bringing large freight and traffic northward; that said portion of right of way so trespassed upon by defendant, is needed by complainants in the improvement of their terminal facilities, in the city of Montgomery, and that the litigation between the complainants and defendant in another suit over the right to use River Street alone postponed the laying of further track and other improvements by complainants on said property; and that if complainants are dispossessed of

said property, it will greatly injure their arrangements for the handling of its business and hamper them in the management of their trains and in the conduct of their business, and that damages in money can not adequately compensate for such injuries, nor are the same capable of accurate ascertainment in money. That the Alabama Midland Railway Company has been notified not to operate said track or to excavate upon said property, but that it has disregarded said warning, and will continue to operate said track and to excavate dirt from said property, and carry the same away, and convert it to its own use, unless prevented by order of court.

The prayer of the bill was that a preliminary injunction be issued restraining the Alabama Midland Railway Company, its officers, agents, attorneys or servants and others operating or using the track described in the bill, from in any manner changing the grade of said property described in the bill, or of removing dirt therefrom, and that upon the final hearing said injunction be made perpetual. Upon the filing of the bill and upon the complainants entering into a bond as required, the preliminary injunction was issued as prayed for in the bill.

The defendant filed its answer to the bill, in which it set up separately its answers to the respective paragraphs of the bill. It admitted the allegations of the first paragraph of the bill; and as to the second paragraph, the defendant having no knowledge of the facts therein averred, neither admitted nor denied the same, but called for strict and legal proof thereof.

The defendant's answers to the third and fourth paragraphs of the bill are sufficiently stated in the opinion.

In answer to the fifth paragraph of the bill the defendants admitted that the property involved in the controversy was included in the map attached as an exhibit to the bill.

In answer to the sixth paragraph of the bill the defendant admitted the lease by the Louisville & Nashville Railroad Co. averred therein, and avers that if it be the purpose of the complainants or either of them by said paragraph to aver that the Louisville & Nashville Railroad Co. ever acquired title to or exercised possession under and by virtue of said lease of any portion of the

property or lands in controversy, then this defendant denies the truth of such allegation and calls for strict legal proof to sustain it.

The answer of the defendant to the seventh and eighth paragraphs of the bill were as follows: "In answer to the seventh paragraph of said bill, this defendant admits that the Alabama Midland Railway Company is chartered and existing under the laws of the State of Alabama, and that it owns and operates a railroad from Montgomery, Alabama, to Bainbridge, Georgia; that its freight depot is situated on North Court Street between one-quarter and one-half of a mile from the property described in paragraphs three, four and five of said bill; that said Railway Company (this defendant) has been making in the city of Montgomery vast and needed changes in the condition of its land, which are valuable and permanent improvements, with the object in view of giving the public excellent and adequate terminal facilities; but denies that in order to reach its said freight depot it is not necessary for the said Railway Company (this defendant) to go upon the lands mentioned in paragraphs 3, 4 and 5.

"In answer to the 8th paragraph of said bill, this defendant emphatically denies that it has laid any track along the property or over the lands belonging to complainants or either of them; or that it is using any track to transport cars thereon loaded with dirt taken from the lands of complainants, or either of them, by means of a steam shovel or otherwise. Defendant denies that it has ever built any track upon any part of the property or lands of complainants, or either of them within the last sixty days, or at any other time; or that a steam shovel has been located on their said property or on lands belonging to them, or either of them, or that the defendant is engaged in making excavations thereon at different times within said sixty days; or that defendant has ever carried away any dirt therefrom, which was the property of complainants, or either of them, or has converted any such dirt to the use of this defendant, the Alabama Midland Railway Co.; or that this defendant has moved any such dirt by means of cars operated on the

track laid on complainants' lands, or either of them. This defendant emphatically denies that it has ever laid any track or tracks on the property or lands of complainants, the Mobile & Montgomery Railroad Company, without the consent of said complainants or either of them; or that defendant has done any act injurious to complainants or either of them, or in violation of the constitutional rights of complainants, or either of them. Defendant denies that the property or lands, upon which said track is laid and said steam shovel was used, forms any portion of complainants' right of way, or that the said track in question has any legitimate or logical connection whatever with any other litigation between these complainants and this defendant in another suit involving the right to use River Street; and further answering, defendant avers upon advice, information and belief that the Supreme Court of this State, in a recent decision held adversely to the pretended claim or right of complainants to use, own, hold or occupy any portion of said River Street. This defendant avers that the laying of a track on its own land, as hereinafter more particularly mentioned and described, will not injure complainants in making arrangements for handling their cars, or hamper them in the management of their trains or in the control of their business; but that even if complainants ever in fact needed the said lands of this defendant for the better handling of their business, and the management of their trains, the defendant submits that these complainants ought not to be permitted under an injunction proceeding like this, to seize and occupy defendant's lands or in any wise or manner be authorized to take possession thereof, without first paying defendant just compensation therefor. This defendant emphatically denies that it has excavated dirt from the land of either of the said complainants, or laid a track thereon; or that it has ever carried or hauled away the soil, or converted dirt taken from complainants' lands to its own use, or in any manner whatever has ever trespassed upon the lands of the complainants, or either of them, or has used or occupied the same without a just and legal right thereto. And, further, answering this defendant says, it has been in possession of the very parcel of land in controversy

ever since the year 1890, and that it acquired title thereto by purchase from various persons who had been in open, notorious, adverse possession of said land for more than ten years previous to the occupancy thereof by this defendant. This defendant avers that its main freight line in the city of Montgomery, until recently, climbed a hill on a track west of its general offices, and that said track was laid on the very land in controversy; that the track of complainants were from ten to thirty feet, at this place, below the said track of defendant; that the defendant recently reduced the grade of its land through block 18, Hanrick's plat, to a level with complainant's land and track, and then laid its own track substantially on the land where it had been previously located, except on a reduced grade; that it was very much to the interest of complainants to have the ground cut away and this land reduced to their own grade level; that complainants never made any objection whatever or served any notice upon this defendant not to do this work until the grade was reduced, the dirt removed and the said track laid; but that when the grade was reduced at great cost and expense to defendant and said track was laid, complainants hastened to claim both track and land; that the said track when completed, would put defendant's main track over and along River Street, where it undoubtedly had the right to go and be laid under and by virtue of an ordinance of the city of Montgomery granting defendant the right to use and occupy said street. This defendant, upon advice, information and belief, avers, that complainants are endeavoring, in another form and under another pretext, to annul the force and effect of said decision of the Supreme Court above referred to, made against it in its recent litigation against this defendant over the use, possession and occupancy of said River Street; that owing to the persistent litigation and harrassment on the part of the complainants in reference to defendant's own property and vested rights, the defendant has been compelled temporarily to change its main line in a direction south of its general office; but this defendant denies that the said track is a spur track, or that it will not be necessary to defendant as a part of its main line, and avers the very reverse to be true.

"Except as hereinabove admitted, defendant emphatically denies each and every allegation and averment as set forth and contained in the several paragraphs of said bill."

To this answer of the defendant there was attached the following affidavit, which was sworn and subscribed to before a notary public:

"State of Alabama,　　　)
Montgomery County.　　 )

Before me, W. E. McKibley, a notary public in and for said State and county, personally appeared B. Dunham, known to me, who being by me first duly sworn deposes and says, that he is the general superintendent of the Plant System, of which the Alabama Midland Railway Company forms a part, and that he is authorized to make this affidavit for and on account of the defendant, the said Alabama Midland Railway Company; that he is acquainted with the premises in controversy, and that the facts as set forth in the several paragraphs of the foregoing answer, when made of his knowledge are true, and when stated upon information and belief, he verily believes the same to be true. B. Dunham, General Supt."

Upon the filing of the answer the defendant moved the court to dissolve the preliminary injunction theretofore issued upon the defendant's sworn answer and the denials therein contains, and also moved to dismiss the bill for the want of equity.

Upon the submission of the cause upon this motion, the court rendered a decree dissolving the injunction, but overruling the motion to dismiss the bill for the want of equity. From the decree dissolving the injunction the complainants appeal, and assign the rendition thereof as error.

THOS. G. & CHAS. P. JONES, and ALEX C. BIRCH, for appellants.—The equity of the bill in the present case is settled by numerous decisions of this court. The latest decision on the subject is that of the *Birmingham Traction Co. v. Birmingham R. & E. Co.*, 119 Ala. 129.

The answer filed by the defendant in this case is insufficient to authorize the dissolution of the injunction. The denials of the complainants' title to the lands involved

in the controversy is the mere expression of the conclusion of the defendant, and there are no facts set out showing the want of title in the complainant. The statement contained in the answer as to the defendant's title is the statement of a mere inference, without any facts which showed the court that the title claimed by the defendant is the correct one.—1 Daniel on Chancery Practice, 673. The purpose of complainants in procuring an injunction, if they have rights in the premises, is immaterial, and the averment that they are seeking to annul the effect of a decision of the Supreme Court in another case, is not responsive to the bill, and presents no answer or defense thereto. This is new matter, which has been imported into one of the paragraphs of the answer, and can not be considered on a motion to dissolve.—*Birmingham R. R. Co. v. Bessemer*, 98 Ala. 274. The affidavit to answer is sworn to by B. Dunham, who states that he is the general superintendent of the Plant system, of which the Alabama Midland forms a part, and has authority to make the affidavit for the defendant; that he was acquainted with the premises in controversy, and that the facts set forth in the several paragraphs of the answer, when made of his own knowledge, are true, and when stated upon information and belief, he verily believes the same to be true. This is an insufficient verification of the answer.—*C. & W. R. R. Co. v. Witherow*, 82 Ala. 190; *Stallworth v. Lassiter*, 59 Ala. 558; Spelling on Extraordinary Relief, § 102. Upon such answer, and verification thereof an injunction can not be dissolved. On motion to dissolve, on bill and answer, everything is presumed against a defendant, in respect of every matter, which defendant could answer directly, and has not answered.—Eden on Injunction, (Waterman's Edition) 136; 10 Amer. and Eng. Encyc. of Law 1018, note 5; 2 Modern Equity Practice, (Beach) page 782. Denial of legal conclusions, properly deducible from the averments of the bill, without stating the facts, will avail nothing.—*C. & W. R. R. v. Witherow*, 82 Ala. 190; *Griffin r. Plant Road Co.*, 11 Ga. 246. An injunction will not be dissolved, upon the hearing, on bill and answer, when the answer is unsatisfactory as *to any matter*, which is

*an essential part of complainant's equity.—Miller v. Mc-Dougal,* 44 Miss. 682; *Brown v. Fuller,* 13 N. J. Eq. 271; *New v. Baine,* 10 Paige 502. A denial by one who has no knowledge will not suffice; nor when made on information and belief, when the facts are positively charged. *Hart v. Clark,* 54 Ala. 490. The record here presents a case where the court must uphold the injunction against the elusive, uncandid and slippery answer.—*Turnley v. Daniel,* 8 Iredell Law, 9; *Troy v. Norment,* 2 Jones Eq. (N. C.) 318; *Burnley v. Cook,* 13 Texas 568; *Allane v. Miners Union,* 51 Fed. Rep. 262.

A general denial of the plaintiff's title—especially when made as a conclusion of law, as unquestionably the case here—has never yet sufficed to raise a fair contest—an issue as to the strength of rival titles—so as to oust the jurisdiction of equity to administer preventive relief.—*E. & W. R. R. Co. v. E. T. Va. & G. R. R. Co.,* 75 Ala. 282; *Cotten v. Valentine,* 9 Paige 575; *Carver v. Paine,* 9 Iowa 172; *Attorney General v. Nicoll,* 16 Vesey 338; *Erhardt v. Boaro,* 113 U. S. 357; 1 Daniels Chancery Practice, (6 Am. ed.) 673; *Mobile v. L. & N. R. R. Co.,* 83 Ala. 115; *City Council v. L. & N. R. R. Co.,* 84 Ala. 129.

The great principles of public policy which compel courts of equity to active supervision and control of the entrance on lands by corporations invested with the power of eminent domain, where they would not intervene as to like acts by a mere individual, likewise require greater scrutiny and care, upon the part of courts, in dissolving injunctions upon answers of such corporations, when called to account for entries upon the lands of others.—*Hamilton v. Hendrick,* 1 Bibb, (Ky.) 57; *Turnley v. Hanna,* 67 Ala. 101. The complainants should not be denied the right to equity's preventive jurisdiction in the preliminary stage of such contest, unless the defendant corporation, accused of the lawless taking, acquits itself in the clearest manner, by a frank unfolding to the court of the real nature and right of its claim.—Lewis on Em. Dom., § 632; *Stratton v. G. W. Railway,* 40 N. J. Eq. 50; *Brown v. Camden & Amboy R. R.,* 4 N. J. Eq. 47; *Frederick v. Groshen,* 30 Md. 436. Compelling corporations exercising the power of eminent

domain to resort to condemnation proceedings before taking lands, can never delay any work of public utility. Judgment once rendered, and the statute compels speedy judgment, allows the party to go on with the public work, and even appeal will not stay it, if the money be deposited in court. It is not inconvenient to observe the law in this case; and if it were, the inconvenience of the observance of the fundamental law can never be given as a reason for refusing to obey it.—*Stratton v. G. W. R. R.*, 40 N. J. Eq. 50. The true doctrine is declared in *E. & W. R. R. Co. v. E. T. V. & G. R. R. Co.*, 75 Ala. 282; *H. A. & B. R. R. Co. v. Matthews*, 99 Ala. 24.

A. A. WILEY, *contra.*—The verification of the answer in this case was sufficient. A railroad corporation must act by and through authorized agents. The rules of law required the answer, so far as the same was responsive to the bill of complaint, to be verified by some officer or authorized agent of the company, conversant with the facts, that are embodied in said answer. This verification was necessary, in order to make that answer the basis of a motion to dissolve the injunction. The general rule is well established that a motion to dissolve an injunction must be predicated upon defendant's answer alone; and that affidavits will not be allowed to take the place of the answer for the purpose of the motion. "This is the only general rule upon the subject that can be safely adopted in practice."—*Sacket v. Hill*, 2 Mich. 182. "An affidavit will not be technically construed, but will be held sufficient if in good faith it seems intended to meet the case."—*Haight v. Arnold*, 48 Mich. 512; *Filer v. Sohns*, 63 Wis. 118. The case, made out by the pleadings in this cause, is not one of irreparable mischief. The equity of the bill, therefore, as well as the injunctive relief prayed for, must stand or fall upon the bill and answer, as disclosed by the record.—*Barnard v. Davis*, 54 Ala. 565. The bill does not show a case of irreparable injury, and is utterly wanting in equity. If its allegations are true, the defendant is simply a trespasser, and an action at law is an adequate remedy.—*A. & C. R. R. Co. v. J. G. & A. R. R. Co.*, 82 Ala. 297; High on Inj. §

629; *Mobile & Girard R. R. Co. v. Ala. Mid. Ry. Co.,* 87 Ala. 520; *Boulo v. Railroad Co.,* 55 Ala. 480. The pending injunction proceeding is in the nature of an action of ejectment to recover possession of lands and the improvements thereon, which defendant uses and occupies, and to oust defendant therefrom. It is plain, therefore, that an injunction will not lie, for the reason that if complainants' contention be true, they have an adequate and complete remedy at law. The answer discloses that complainants do not need the land in their business operations, nor have they been deprived of one inch of land occupied or possessed by them, or either of them; nor have they ever been deprived by this defendant of the use and enjoyment of any property, which rightfully belonged to them, for railroad purposes.—*Scharmeiar v. R. R. Co.,* 83 Amer. Dec. 740; *Zabriskie v. R. R. Co.,* 13 N. J. Eq. 314; *Baraem v. R. R. Co.,* 40 N. J. Eq. 557.

Complainants knowingly waited until defendant reduced the grade of the parcel of land in dispute—the *locus in quo*—at great expense to itself, without objection on complainants' part; and then most inequitably claimed the whole. They are estopped by their own conduct.—*S. & N. Ala. R. R. Co. v. A. G. S. R. R. Co.,* 102 Ala. 236. An injunction in this case would operate greatly to the prejudice of this defendant, as well as to the general public, without any corresponding advantage to complainants. Under such circumstances, the parties will be left to their remedies at law; and the injunction should be dissolved.—*H. A. & B. R. R. Co. v. Birm. Min. R. R. Co.,* 93 Ala. 505; High on Injunc. § 528; *Western Ry. v. G. T. R. R. Co.,* 96 Ala. 272. The injunction ought to have been dissolved on the sworn denials of the answer. *Rogers v. Bradford,* 29 Ala. 474; 1 High on Inj., § 362. The denials of the answer are clear and explicit; and demonstrate that complainants are not entitled to relief. The answer is sworn to; and the oath is full, ample and complete. It has been settled by repeated adjudications of this court, that when the answer contains a full and complete denial of the allegations, on which rests the equity of the bill, the injunction should be dissolved. *Sanders v. Cavett,* 38 Ala. 51; *Brooks v. Diaz & Co.,* 35 Ala. 599; *Mallory v. Matlock,* 10 Ala. 595; *Long v. Brown,* 4 Ala. 622.

SHARPE, J.—Notwithstanding the general principle that a trespass upon lands will not be enjoined in equity where the rights of the parties are legal and adequate relief can be afforded by a court of law, yet it is well settled that the courts of chancery will enjoin a corporation empowered to exercise the right of eminent domain when it is proceeding to take or injure land for its uses without consent of the owner and without legal proceedings to subject it to such use.—*N. O. & S. R. R. Co. v. Jones,* 68 Ala. 48, s. c. 70 Ala. 227; *C. & W. R'y Co. v. Witherow,* 82 Ala. 197; *Birmingham Traction Co. v. Birmingham Railway & Electric Co.,* 119 Ala. 129; *E. & W. R. R. Co. v. E. T. V. & Ga. R. R. Co.,* 75 Ala. 275.

The ground of this equitable jurisdiction is the enforcement of the constitutional prohibition against such taking or injury; and the constitutional provision is applicable alone where the right of eminent domain might be exercised.

In the case of *E. & W. R. R. Co. v. E. T. V. & G. R. R. Co., supra,* referring to the right of eminent domain, this court said: "The power is so capable of abuse and those who are invested with it are often so prone to its arbitrary exercise, that a court of equity, without inquiring whether there is irreparable injury or injury not susceptible of adequate redress by legal remedies, will intervene for the protection of the owner."

Under this principle this bill shows clearly a case for injunctive relief. It alleges an interest in each of the complainants, the one as lessor and the other as lessee of the lands in controversy, each of which interests is subject to condemnation by appropriate legal proceedings to the use of other railroads at least to an extent consistent with complainants' use. The ownership of the complainant lessor is alleged, as is the title by which it claims to hold; being by deeds which are made exhibits, and by adverse possession thereunder for a time sufficient to perfect its title. It alleges the removal of dirt and the laying of defendant's track along the land against complainants' objection and without condemnation proceedings, and the bill is verified by affidavit in due form. It is, there-

fore, upon the character of the answer that the propriety
of the decree appealed from must be determined.

Ordinarily, an injunction will not be dissolved upon
the denials of the answer when the denials are stated
merely as conclusions or as inferences to be drawn from
facts alleged in the bill. To overthrow allegations of
fact in the bill, the answer must deny the existence of
such facts specifically and without equivocation or eva-
sion.—*Henry v. Watson,* 109 Ala. 335; *Consolidated
Electric Light Co. v. People's Electric Light &c. Co.,*
94 Ala. 372; *Rembert v. Brown,* 17 Ala. 667; *C. & W. R'y
Co. v. Witherow,* 82 Ala. 190; *Teasey v. Baker,* 19 N. J.
Eq. 61.

So where the bill alleges facts constituting title in the
complainant in the subject matter of the controversy
and the answer depends upon a want of such title in the
complainant, a mere denial of such ownership as a con-
clusion is insufficient; since from it the court cannot
know the correctness of the conclusion. Upon the same
principle where denials of complainant's ownership are
based upon a counter-claim of title by the defendant, his
mere assertion of title as a conclusion is insufficient; but
the facts from which the interest would arise should be
set forth so that the court can see that the claim is well
founded.

The description of the greater part of these lands and
the complainants' claim of title thereto are set forth in
paragraph 3 of the bill.

The specific answer thereto begins by stating that the
defendant "is not advised and has no knowledge of the
facts set forth and contained therein, and therefore
neither admits nor denies the same, but calls for strict
and legal proof thereof." This disclaimer of knowledge
even as to complainants' alleged adverse possession is
followed by the statement that "if it be the purpose of
the complainant in or by said paragraph of said bill or
any part thereof to aver that either of them, the said
complainants or the Alabama & Florida Railroad Co.,
have ever been in possession of or had title to any part
of the parcel of land or the appurtenances thereunto
belonging which forms the subject matter of this suit,
then this defendant emphatically denies that either of

11

said named railway companies either now or at the time of filing this bill had any just of legal right, title, claim or interest in or to the said property in controversy."

This must be taken for the purpose of the motion to dissolve the injunction as an admission of the facts alleged in the third paragraph, and a denial merely as a conclusion that they give complainants any just or legal right.

The 4th paragraph of the bill avers the purchase and the procurement of a deed in 1871 to the complainant, the M. & M. Railway Co., of a right of way over a part of lot 9 and the continuous possession thereafter of the complainants successively. The specific answer to that paragraph admits the alleged purchase; but states that "if it be the purpose of the complainants or either of them in or by said paragraph to set up or allege that they or either of them have any just or legal right, title, claim or interest in or to the land in controversy (from the use and occupancy of which defendant is restrained by writ of injunction issued from this honorable court), then this defendant emphatically denies that said complainants or either of them have any legal right, title, interest or claim therein or thereto; and further denies that said Montgomery & Mobile Railroad Company, its successors or assigns, have been in possession of said tract of land ever since said deed was executed."

Here again the complainants' right is denied in a qualified way and only as a conclusion. Construed against the pleader the denial of complainants' possession may relate only to a period after the bill was filed.

The answer proceeds further to deny that defendant has trespassed upon lands of the complainants, but its occupation of the lands described in the bill is not denied.

Replying generally to the bill the answer sets up that the defendant "has been in possession of the very parcel of land in controversy ever since the year 1890, and that it acquired title thereto by purchase from various persons who had been in open notorious adverse possession of said land for more than ten years previous to the occupancy thereof by this defendant."

Here is new matter, the burden of proving which rests on the defendant, and except so far as it may imply a denial of title in the complainants it cannot be looked to upon the motion to dissolve the injunction; the general rule in such case being that only so much of the answer as is responsive to the bill will be considered. *C. & W. R'y Co. v. Witherow,* 82 Ala. 190, *supra; Calhoun v. Cozens,* 3 Ala. 498.

It has been held, however, that where the controversy resolves itself into a naked dispute as to the strength of the legal title, equity will not ordinarily intervene; and to bring the case within that category the last quoted paragraph of the answer may be examined along with others. We think, however, that it is lacking in definiteness and that the equitable remedy, when invoked for the protection of the constitutional rights, should not be defeated merely by the setting up of an adverse claim, unless the facts upon which the claim is based are also shown so that at least its *bona fides* can be recognized. Besides being weakened by the disclaimer of all knowledge of complainants' possession, ignorance of which must have been impossible if the defendant had been in possession, the answer as to defendant's acquisition of title "by purchase from various persons" whose identity is not disclosed is but the statement of a conclusion in which the court might not agree if the facts depended upon as conferring title were shown.

The answer is otherwise insufficient for the purposes of the motion for lack of a proper oath. Whether the oath is waived by the bill or not, the answer must be sworn to before an injunction will be dissolved upon its denials.—Rule 32, Ch. Pr., Code, p. 1209; *Hart v. Clark,* 54 Ala. 490. The answer of a corporation is not an exception to the rule.—*Griffin v Bank,* 17 Ala. 258.

The affidavit to this answer is made by defendant's superintendent and as to the facts, it states merely that the affiant "is acquainted with the premises in controversy, and that the facts as set forth in the several para-

[Miller *et al.* v. Morris *et al.*]

graphs of the foregoing answer when made of his own knowledge are true and when stated upon information and belief, he verily believes the same to be true." Nothing is needed to show the ineffectual character of this attempt at verification further than to refer to the fact that no statement in the answer purports to have been made as of the knowledge or the information of the affiant. Both in respect of its denials and its verification the answer was insufficient to work a dissolution of the injunction or the stay of proceedings in the cause.

The decree appealed from will be reversed, and an order made re-instating the injunction and remanding the cause. The appellee will pay the costs of the appeal in this court and in the city court.

Reversed and remanded.